J-S51013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| THOMAS MUIR | |
| Appellant | No. 3748 EDA 2015 |

Appeal from the Judgment of Sentence November 5, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0000946-2015

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED AUGUST 12, 2016**

Appellant, Thomas Muir, appeals from the judgment of sentence entered in the Chester County Court of Common Pleas, following his open guilty plea to two counts each of homicide by vehicle while driving under the influence, aggravated assault by vehicle while driving under the influence, recklessly endangering another person ("REAP"), and one count of driving under the influence ("DUI").[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Between 6:00 p.m. and 7:00 p.m. on February 14, 2015, Appellant rear-ended the Hannagan's minivan while driving his truck approximately 98

_____

[1] 75 Pa.C.S.A. §§ 3735(a), 3735.1(a), 18 Pa.C.S.A. § 2705, and 75 Pa.C.S.A. § 3802(c), respectively.

_____

*Retired Senior Judge assigned to the Superior Court.

miles per hour in inclement weather. The accident severely injured Paul and Maggie Hannagan, and killed their children, Miles and Charlotte Hannagan. After Appellant performed poorly on field sobriety tests, police arrested Appellant and transported him to the hospital where he consented to a blood test. The blood test revealed that Appellant was under the influence of alcohol and had a blood alcohol content of .164. The test also revealed that Appellant was under the influence of Klonopin, an anti-anxiety drug that enhances the effects of alcohol. During the investigation of the accident, police discovered that numerous individuals had called 911 to report Appellant's erratic behavior and driving in the hour prior to the crash.

On March 27, 2015, the Commonwealth charged Appellant with two counts each of homicide by vehicle while DUI, homicide by vehicle, aggravated assault by vehicle while DUI, and aggravated assault by vehicle, six counts of REAP, and one count each of DUI, reckless driving, and prohibiting text-based communications. On September 18, 2015, Appellant entered an open guilty plea to two counts each of homicide by vehicle while DUI, aggravated assault while DUI, and REAP, and one count of DUI. The court deferred sentencing pending the preparation of a pre-sentence investigation ("PSI") report.

On November 5, 2015, the court conducted a sentencing hearing, where both the Commonwealth and Appellant presented extensive testimony about the effects of the accident on the Hannagan family, Appellant,

Appellant's family, and the community. Paul and Maggie Hannagan, Appellant's parents and siblings, and numerous family members and friends of the Hannagan family and Appellant were among the individuals who testified at the hearing. Appellant also testified and apologized to the Hannagan family and the court for his actions on the night of the accident. Prior to imposing Appellant's sentence, the court stated it had read the PSI report, pre-sentence memoranda filed by both the Commonwealth and Appellant, and numerous letters to the court written on behalf of Appellant and the Hannagan family. The court then engaged in a lengthy discussion of the following: (1) Appellant's rehabilitative needs; (2) the gravity of the offense; (3) the impact on the Hannagan family; and (4) Appellant's acceptance of responsibility for his actions and genuine remorse. The court ultimately sentenced Appellant to five (5) to ten (10) years' incarceration on each conviction for homicide by vehicle while DUI, three (3) to six (6) years' incarceration for each conviction for aggravated assault while DUI, and five (5) to twelve (12) months' incarceration for each REAP conviction. The court also imposed a sentence of fourteen (14) to twenty-eight (28) months' incarceration at a separate docket for Appellant's possession of a controlled substance with the intent to deliver ("PWID") conviction, which stemmed from an incident that occurred prior to the accident. The court ordered Appellant to serve all of the sentences consecutively; thus, the court imposed an aggregate term of eighteen (18) to thirty-six (36) years'

imprisonment.

On November 13, 2015, Appellant timely filed a post-sentence motion, which asked the court to reconsider and reduce his sentence. The court denied the motion on November 17, 2015. Appellant timely filed a notice of appeal on December 15, 2015. On December 17, 2015, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on December 29, 2015.

Appellant raises the following issue for our review:

> WHETHER THE COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT TO AN UNDULY HARSH AND EXCESSIVE SENTENCE (AGGREGATE PRISON TERM OF 18-36 YEARS OF INCARCERATION) BY IMPOSING A SENTENCE THAT WILL, IN EFFECT, WAREHOUSE [APPELLANT] FOR A SUBSTANTIAL PERIOD OF HIS LIFE?

(Appellant's Brief at 4).

Appellant challenges the consecutive sentences he received for each of his convictions, which were either in the aggravated range or outside the aggravated range of the sentencing guidelines. Specifically, Appellant complains the court based its lengthy sentence on its erroneous determination that the Commonwealth could have charged Appellant with third-degree murder. Appellant maintains the Commonwealth did not charge him with third-degree murder, and it was improper for the court to impose a sentence based on this uncharged offense. Appellant further contends the court failed to consider certain mitigating factors such as

- 4 -

Appellant's genuine remorse for the Hannagan family, prompt admission of guilt, strong employment and education background, supportive family, non-violent past, addiction problems, and mental health issues. Appellant concludes the court's reliance on an uncharged offense and failure to consider certain mitigating factors led to the imposition of a manifestly excessive sentence, which will imprison Appellant for a significant portion of his adult life. As presented, Appellant challenges the discretionary aspects of his sentence.[2] *See Commonwealth v. Lutes*, 793 A.2d 949 (Pa.Super. 2002) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa.Super. 2000). Prior to reaching the merits of a discretionary aspect of sentencing issue:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and

---

[2] "[W]hile a guilty plea which includes **sentence negotiation** ordinarily precludes a defendant from contesting the validity of his…sentence other than to argue that the sentence is illegal or that the sentencing court did not have jurisdiction, **open** plea agreements are an exception in which a defendant will not be precluded from appealing the discretionary aspects of the sentence." *Commonwealth v. Tirado*, 870 A.2d 362, 365 n.5 (Pa.Super 2005). "An 'open' plea agreement is one in which there is no negotiated sentence." *Id.* at 363 n.1. Here, Appellant's guilty plea included no negotiated sentence.

modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa.Super. 2013), *appeal denied*, 621 Pa. 682, 76 A.3d 538 (2013) (quoting *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006)). Generally, objections to the discretionary aspects of a sentence are waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003). Inclusion of objections to the discretionary aspects of sentencing in a Rule 1925(b) statement will not cure a waiver stemming from failure to raise objections at the sentencing hearing or in a post-sentence motion. *Commonwealth v. Oree*, 911 A.2d 169, 174 n.4 (Pa.Super. 2006), *appeal denied*, 591 Pa. 699, 918 A.2d 744 (2007).

Instantly, Appellant timely filed a post-sentence motion on November 13, 2015; however, Appellant's motion merely asked the court to, "consider reducing the amount of incarceration imposed." (**See** Appellant's Motion for Reconsideration and Reduction in Sentence, filed 11/13/15, at 2). Significantly, Appellant's motion did not raise the claims he now presents on appeal concerning the court's alleged consideration on an uncharged offense or the court's failure to consider certain mitigating factors. Appellant also

failed to raise these claims at the time of sentencing. Appellant's failure to raise these claims at sentencing or specify these claims in his post-sentence motion constitutes waiver for purposes of our review. **See Griffin, supra**; **Mann, supra**. Further, Appellant's inclusion of these claims in his Rule 1925(b) statement does not cure this waiver. **See Oree, supra**.

Moreover, even if properly preserved, Appellant's claims would merit no relief. The court had the benefit of a PSI report at sentencing. Therefore, we can presume the court considered the relevant factors when it sentenced Appellant. **See Tirado, supra** at 368 (holding where sentencing court had benefit of PSI, law presumes court was aware of and weighed relevant information regarding defendant's character and mitigating factors). Additionally, the court engaged in an extensive discussion on the record of its reasons for Appellant's sentence. Specifically, the court stated it considered the information in the PSI report, pre-sentence memoranda filed by both the Commonwealth and Appellant, and numerous letters written on behalf of Appellant and the Hannagan family. The court then discussed Appellant's: (1) numerous wake up calls and chances provided by the court; (2) previous unsuccessful attempts at rehabilitation; (3) criminal conduct while in treatment through Drug Court; (4) careless driving citation a month before the accident; (5) strong education background; and (6) supportive family. The court concluded that Appellant's continued criminal behavior despite all of his opportunities to turn his life around increases the likelihood

that Appellant will reoffend. The court next detailed the gravity of the offense and highlighted the following facts: (1) the inclement weather at the time of the accident; (2) Appellant's sustained period of drunk driving, as demonstrated by the numerous 911 calls made during the hour prior to the accident; (3) Appellant's speed at the time of the accident; (4) the injuries and deaths caused by Appellant's drunk driving; (5) Appellant was texting at the time of the accident; (6) the Klonopin in Appellant's system, which enhanced the effect of the alcohol in Appellant's system; and (7) Appellant was driving on a major thoroughfare during peak travel time on Valentine's Day. The court further discussed the impact of the accident on the Hannagan family, Appellant's family and the community. The court finally explained that it would not impose the maximum sentence for each conviction, given Appellant's genuine remorse and prompt acceptance of responsibility for his actions. Only after this lengthy discussion did the court impose an aggregate term of eighteen (18) to thirty-six (36) years' imprisonment. Importantly, the court did not rely on a belief that Appellant's case warranted a third-degree murder charge at any time during sentencing. In fact, the court mentioned third-degree murder only to explain that the facts of Appellant's case did not support a third-degree murder charge. Thus, even if Appellant had properly preserved his claim, we would rely on the court's analysis and deny relief on appeal. Based upon the foregoing, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/2016