**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Omar OREE, Appellant.**

Superior Court of Pennsylvania.

Submitted June 12, 2006.

Filed Nov. 3, 2006.

---

170 ■

Vincent J. Quinn, Lancaster, for appellant.

Donald R. Totaro, Asst. Dist. Atty., Lancaster, for Com., appellee.

BEFORE: STEVENS, ORIE MELVIN, and POPOVICH, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Lancaster County following Appellant's conviction by a jury on the charges of simple assault and recklessly endangering another person.[1] In addition

1. 18 Pa.C.S.A. §§ 2701 and 2705, respectively. Appellant was found not guilty of aggra- vated assault, 18 Pa.C.S.A. § 2702.

to receiving a term of imprisonment, Appellant was ordered to pay restitution to the victim in the amount of $1,229,229.09. On appeal, Appellant challenges the trial court's imposition of restitution. We affirm.

¶ 2 The relevant facts and procedural history are as follows: Appellant was arrested in connection with the beating of the victim, and on April 7, 2005, he proceeded to a jury trial. During trial, witness testimony established that during the evening of July 6, 2004, the victim and a friend were drinking beer on the back fire escape of the apartment building where the men resided. N.T. 4/7/05 at 117–118. The victim became visibly intoxicated. N.T. 4/7/05 at 118. During the evening, Appellant, who came to visit someone in the apartment building, approached the men and drank a beer with them. N.T. 4/7/05 at 119–120. When Appellant asked for another beer, the victim said "no." N.T. 4/7/05 at 120. The victim became upset, struck Appellant in the head with his fist, and pushed Appellant. N.T. 4/7/05 at 121. Appellant then punched the victim's head, and the victim became unconscious, falling face-down to the ground. N.T. 4/7/05 at 122. Appellant then kicked the victim and slapped him at least twice, resulting in no response from the victim. N.T. 4/7/05 at 123. Appellant also hit the unconscious victim's head and back with a can of beer. N.T. 4/9/05 at 142. Appellant then picked the victim up by his hair and slammed his face into the cement. N.T. 4/7/05 at 124. During the assault, Appellant stated "he hoped [the victim] got up so that he could knock him back down again," and "if he had a knife, he'd slice him. If he had a gun, he'd blow him away." N.T. 4/9/05 at 144.

¶ 3 At the conclusion of trial, Appellant was convicted of the offenses indicated *supra.* On August 4, 2005, he proceeded to a sentencing hearing, where testimony established that, immediately after the assault, the victim had surgery because he had fluid on his brain. N.T. 8/4/05 at 15. A CAT scan revealed the victim suffers from an organic brain syndrome due to head trauma, resulting in his need to reside at a nursing home. N.T. 8/4/05 at 11–14. While the victim is no longer unconscious, he is unable to bathe, dress, comb his hair, or brush his teeth without assistance. N.T. 8/4/05 at 11. The victim is unable to return to his home, and he will require care in a nursing home indefinitely. N.T. 8/4/05 at 13–14. The nursing home receives a per diem rate from the Department of Public Welfare for the victim's care; however, the victim is still responsible for a payment of $436.00 per month. N.T. 8/4/05 at 17–18. Since the victim has no income, the money he is eligible for from the Social Security Administration is paid directly to the nursing home. N.T. 8/4/05 at 19. As of July 11, 2005, the Department of Public Welfare had paid the nursing home $36,042.03, which was an average monthly payment of $4,167.32. N.T. 8/4/06 at 23–24. When such a payment was multiplied by twelve months and then multiplied by the victim's life expectancy of 23.86 years, the total was $1,193,187.06. N.T. 24–28. When the projected $1,193,187.06 was added to the $36,042.03 the Department of Public Welfare had already paid for the victim's care, the total is $1,229,229.09. N.T. 8/4/05 at 29. This figure did not include monies being paid by the Social Security Administration. N.T. 8/4/05 at 25.

¶ 4 Following the hearing, the trial court determined simple assault merged with recklessly endangering another person for sentencing purposes, sentenced Appellant to one year less one day to two years less one day in county prison, and made Appellant eligible for work release. The trial

court then ordered a capped amount of $1,229,229.09 in restitution.[2]

¶ 5 Appellant filed a timely post-sentence motion seeking the reconsideration of his sentence. Specifically, Appellant requested that the trial court place Appellant on house arrest with work release eligibility. Appellant further averred that he is unable to pay the restitution amount since he is indigent, making approximately $2,000.00 per month as a machine operator, and has no savings. On October 11, 2005, the trial court held a hearing regarding Appellant's post-sentence motion. During the post-sentence motion hearing, Appellant testified that he is a machine operator, and he works from 6:00 p.m. until 6:00 a.m. N.T. 10/11/05 at 6. He testified that it is difficult for him to sleep during the day because the prison is noisy. N.T. 10/11/05 at 7. He further testified that he is earning $2,500.00 per month. N.T. 10/11/05 at 8. He testified that he is paying $800.00 in rent per month, and after paying all basic necessities, he has about $75.00 left over. N.T. 10/11/05 at 8.

¶ 6 By order filed on October 20, 2005, the trial court denied Appellant's post-sentence motion, and this timely appeal followed. All Pa.R.A.P.1925(b) requirements have been met.[3]

¶ 7 Appellant raises two issues, both of which are closely related. Appellant contends the trial court's award of restitution violated the Eighth Amendment, Article 1 § 13 of the Pennsylvania Constitution, and 18 Pa.C.S.A. § 1106 since there was insufficient evidence that the victim's injuries directly resulted from the crime. Specifically, Appellant contends that, since the jury acquitted him of aggravated assault,

the jury conclusively established that Appellant was not criminally responsible for the infliction of all of the victim's injuries, and therefore, requiring Appellant to pay for all of the costs associated with the victim's injuries is unconstitutional and a violation of Section 1106. He further argues the amount of restitution imposed is disproportionate to his crimes because he will be making payments for the rest of his life, resulting in a cruel and unusual punishment.

¶ 8 Initially, before addressing the merits of Appellant's issues, we must determine whether the issues are properly before us. It is well-settled that "issues challenging the discretionary aspects of sentencing must be raised in a post-sentence motion or by raising the claim during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." *Commonwealth v. Watson*, 835 A.2d 786, 791 (Pa.Super.2003) (citations and quotations omitted). *See Commonwealth v. Shugars*, 895 A.2d 1270 (Pa.Super.2006) (holding that discretionary aspects of sentencing claims must be raised during the sentencing proceedings or in a post-sentence motion in order to be preserved). However, "[a]n illegal sentence can never be waived and may be reviewed *sua sponte* by this Court." *Commonwealth v. Jacobs*, 900 A.2d 368, 374 (Pa.Super.2006) (*en banc*).

¶ 9 In the case *sub judice*, a review of the record reveals that Appellant failed to raise his sentencing issues during his sentencing hearing, in his post-sentence motion, or during his post-sentence motion hearing. That is, Appellant never raised his specific sentencing issues in the lower

---

2. The trial court indicated that, in the event the victim's physical condition improves or the victim dies, the restitution amount would be subject to reduction.

3. Appellant's specific sentencing issues were raised in his court-ordered Pa.R.A.P.1925(b) statement.

court.[4] Therefore, if Appellant's issues are a challenge to the discretionary aspects of his sentence, they are waived. *Watson, supra.* However, if Appellant's issues are a challenge to the legality of his sentence, then the issues are not waived. *Jacobs, supra.*

■ ¶ 10 Regarding challenges to the trial court's imposition of restitution, the appellate courts have drawn a distinction between those cases where the challenge is directed to the trial court's authority to impose restitution and those cases where the challenge is premised upon a claim that the restitution order is excessive. When the court's authority to impose restitution is challenged, it concerns the legality of the sentence; however, when the challenge is based on excessiveness, it concerns the discretionary aspects of the sentence. *See In the Interest of M.W.*, 555 Pa. 505, 725 A.2d 729 (1999); *Commonwealth v. Langston*, 904 A.2d 917 (Pa.Super.2006) (holding an appellant's claim that the sentence required her to pay restitution to a person who was not a "victim" was a legality of sentencing claim); *Jacobs, supra* (indicating a challenge to the authority of the court to give a particular sentence is a legality of sentencing claim); *Commonwealth v. Walker*, 446 Pa.Super. 43, 666 A.2d 301 (1995) (holding that challenge to the appropriateness of restitution is a legality of sentencing claim whereas challenge based on excessiveness is a discretionary aspect of sentencing claim). Moreover, this Court has held that an appellant who challenges the constitutionality of his sentence raises a legality of sentencing claim since he is challenging the trial court's authority in imposing the sentence. *See Commonwealth v. Lebo*, 713 A.2d 1158 (Pa.Super.1998) (holding that an appellant's contention that a $5,000 fine was an unconstitutional forfeiture was a legality of sentencing claim); *Commonwealth v. O'Neil*, 393 Pa.Super. 111, 573 A.2d 1112 (1990) (finding that a legality of sentencing claim existed where an appellant alleged that, because he was HIV positive, the trial court's sentence of imprisonment violated the Eighth Amendment).

■ ¶ 11 A synthesis of the existing case law leads us to conclude that, in the case *sub judice*, Appellant's issues are a challenge to the legality of Appellant's sentence. That is, Appellant's issues are a challenge to the trial court's authority to impose restitution in an amount in excess of that which the jury determined Appellant was criminally responsible for and under circumstances which will take Appellant an entire lifetime to pay back. *See Walker, supra* (holding claim that restitution order was not based on a determination of criminal responsibility for the injuries sustained by the victim was a legality of sentencing claim); *O'Neil, supra* (holding that fact defendant was HIV positive and may not live to see the end of his four to ten years' imprisonment was a legality of sentencing claim). Therefore, we shall proceed to a determination of the merits.

¶ 12 The Eight Amendment's cruel and unusual punishments clause prohibits sentences which are wholly and irrationally disproportionate to the crime.[5] Pennsylvania specifically authorizes restitution for any crime where "the victim suffered per-

---

4. We note that including a discretionary aspect of sentencing claim in a Pa.R.A.P.1925(b) statement will not cure the waiver which results from failing to raise the sentencing issue in the trial court.

5. The Eighth Amendment of the United States Constitution and Article 1, § 13 of the Pennsylvania Constitution provide: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted."

sonal injury directly resulting from the crime . . .," 18 Pa.C.S.A. § 1106(a), and provides that "[t]he court shall order full restitution: (i)[r]egardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss," 18 Pa.C.S.A. § 1106(c)(1)(i). Moreover, Pennsylvania law indicates that in determining the amount of restitution the court "[s]hall consider the extent of injury suffered by the victim . . . .," 18 Pa.C.S.A. § 1106(c)(2)(i), and defines "personal injury" as "[a]ctual bodily harm, including pregnancy, directly resulting from the crime," 18 Pa.C.S.A. § 1106(h).

■ ¶ 13 In the case *sub judice,* we have no difficulty concluding that the trial court's award of restitution was not constitutionally disproportionate to the offenses Appellant committed and was for the victim's personal injuries resulting directly from Appellant's crimes. Witness testimony established that, after the victim lost consciousness and was laying face-down on the ground, Appellant continued to kick, slap, and hit with a beer can the victim's head. Appellant also picked up the victim's head by the hair and slammed it onto a concrete sidewalk. Evidence established that the victim has an organic brain syndrome due to his head trauma and he will require care in a nursing home indefinitely.

¶ 14 A jury convicted Appellant of simple assault and recklessly endangering another person in connection with his actions. Therefore, the jury concluded Appellant "intentionally, knowingly, or recklessly caus[ed] bodily injury to [the victim]," 18 Pa.C.S.A. § 2701(a)(1), and "recklessly engage[d] in conduct which place[d] or may [have] place[d] [the victim] in danger of death or serious bodily injury," 18 Pa. C.S.A. § 2705. As the courts utilize a "but for" test in calculating those damages

which occurred as a direct result of the crime, we conclude the trial court did not err in imposing restitution for the loss which flowed from Appellant's conduct for which Appellant was held to be criminally responsible. *See Commonwealth v. Pappas,* 845 A.2d 829 (Pa.Super.2004). Simply put, the trial court's imposition of restitution was not illegal.

¶ 15 Appellant makes much of the fact the jury acquitted him of aggravated assault. This fact alone does not require a different result. The facts of this case reveal that the trial court's imposition of restitution was not wholly and irrationally disproportionate to the crimes committed by Appellant. In addition, contrary to Appellant's assertion, the trial court did not order Appellant to compensate the victim for all of the losses associated with the victim's injuries. The trial court's restitution amount is equivalent to the amount the Department of Public Welfare is expected to pay for nursing home care over the anticipated lifetime of the victim. The trial court's restitution amount did not include the victim's social security monies, which are given directly to the nursing home, or any prior medical bills.

■ ¶ 16 Finally, regarding Appellant's claim the imposition of restitution was unconstitutional since it will take him a lifetime to pay, we find the claim to be meritless. Appellant does not cite, nor are we aware of, any authority for his claim that ordering an amount of restitution which may take him a lifetime to pay is *per se* cruel and unusual punishment. While we do not doubt Appellant's assertion that he may be making restitution payments for the balance of his lifetime since he currently earns only $2,500.00 per month as a machine operator, we will not make the sweeping pronouncement he seeks. We hold that the trial court's imposition of

restitution does not constitute *per se* cruel and unusual punishment simply because it may take Appellant a lifetime to pay. As indicated *supra*, we conclude the trial court properly exercised its authority and did not impose restitution which was disproportionate to the injuries caused by Appellant.

¶ 17 For all of the foregoing reasons, we affirm.

¶ 18 Affirmed.