J-S49027-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BREONNA LASHAE SWEENEY | : | |
| | : | |
| Appellant | : | No. 1878 WDA 2019 |

Appeal from the Judgment of Sentence Entered November 13, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0011186-2017

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                 FILED NOVEMBER 30, 2020

Appellant, Breonna Lashae Sweeney, appeals from the November 13, 2019 Judgment of Sentence entered in the Allegheny County Court of Common Pleas following remand from this Court for resentencing.  Appellant challenges the restitution portion of her Judgment of Sentence that directed her to pay restitution to Equian, LLC.  After careful review, we reverse and remand for resentencing.

The relevant facts and procedural history are as follows. On May 20, 2017, Appellant and her co-defendant, Roneese Davis, assaulted a former co-worker while the three women were riding a Pittsburgh Port Authority bus. Video surveillance footage recorded the assault and showed Appellant and Ms. Davis repeatedly punching and slapping the victim on the face.  Immediately

_____

[*] Former Justice specially assigned to the Superior Court.

following the attack, the victim complained of head and facial pain, vision problems, and reported that her eyeglasses had been broken in the assault. The victim immediately sought medical treatment at Magee Women's Hospital and, on June 7, 2017, underwent surgery at UPMC to repair a detached retina. The Commonwealth charged Appellant and Ms. Davis with one count each of Simple Assault, Disorderly Conduct, Criminal Mischief, and Harassment[1] arising from the assault.

On March 12, 2018, Appellant and Ms. Davis entered guilty pleas to those offenses. That same day, the trial court sentenced Appellant and Ms. Davis to two years of probation for the Simple Assault convictions followed by one year of probation for the Disorderly Conduct convictions. At sentencing, the Commonwealth submitted a restitution request for $5,383.88 payable to Equian, LLC ("Equian"), a third party collection agency.[2] The Commonwealth also sought restitution of $1,300 for ambulance and hospital expenses paid by the Victim's Compensation Assistance Program and $149 paid by the victim to Family Vision Care to replace her eyeglasses. The court noted that it would order Appellant and Ms. Davis to pay restitution jointly and severally, but

_____

[1] 18 Pa.C.S. §§ 2701(a)(1), 5503(a)(4), 3304(a)(5), and 2709(a)(1), respectively.

[2] The Commonwealth explained UPMC "sent to the debt collector" the costs associated with surgery to repair the victim's detached retina because the victim was uninsured. N.T. Restitution Hr'g, 4/13/18, at 6-7. According to the trial court, "UPMC contracted with Equian, a third party collection agency, to administer [UPMC's] claim." N.T. Restitution Hr'g, 6/21/18, at 4.

- 2 -

deferred determining the amount of the restitution award pending a restitution hearing.

On April 13, 2018, May 8, 2018, and June 21, 2018, the trial court held hearings to establish the amount of the restitution owed by Appellant and Ms. Davis. The Commonwealth submitted to the court copies of the victim's medical records, an itemized statement of expenses from the Victim's Compensation Assistance Program, a statement of charges and payments from Family Vision Care, and a "consolidated statement of benefits"[3] and letter from Equian in support of its restitution claim. Defense counsel conceded that the medical expenses incurred by the victim arose from surgery to repair the victim's detached retina, but argued that the Commonwealth had not presented any evidence that the criminal assault perpetrated by Appellant and Ms. Davis caused the victim's detached retina. Defense counsel also averred that Equian is not an enumerated "victim" under the applicable restitution statute, 18 Pa.C.S. § 1106 (the "Restitution Statute"), or an actual person, and, thus, is not entitled to restitution. The Commonwealth asserted that the victim's medical records and her impact statement at the guilty plea and sentencing hearing supported the claim for restitution payable to Equian. The Commonwealth also argued that Equian is a "victim" under the Restitution Statute because the statute's enumerated list of victims is non-exhaustive and

_____

[3] N.T. Restitution Hr'g, 4/13/17, at 12. The "consolidated statement of benefits" detailed the procedures performed on the victim at UPMC and the dates of service. Id. at 13.

denying Equian restitution would frustrate the purpose of the restitution statute.

The sentencing court agreed with the Commonwealth that there was, beyond a reasonable doubt, a direct causal link between the assault and the victim's detached retina,[4] and that Equian was a "victim" under the Restitution Statute. Thus, on June 21, 2018, the court ordered Appellant and Ms. Davis to pay $5,383.88 in restitution jointly and severally to Equian, $1,296.71 to the Victim's Compensation Assistance Program, and $149 to the victim.

On June 29, 2018, Appellant filed a Post-Sentence Motion to Reconsider Restitution Order in which she reasserted her arguments that Equian was not a "victim" entitled to receive restitution and that the Commonwealth had failed to prove a causal nexus between the victim's detached retina and the crimes committed by Appellant. The court denied Appellant's Motion.

Appellant and Ms. Davis jointly appealed to this Court challenging the portion of the sentencing court's June 21, 2018 Order awarding restitution to Equian. On August 29, 2019, this Court vacated Appellant's and Ms. Davis's Judgment of Sentence and remanded for resentencing concluding that the trial court erred as a matter of law by failing to determine the amount of restitution at the original time of sentencing. See Commonwealth v. Sweeney, 2019 WL 4072332 at *2 (Pa. Super. filed Aug. 29, 2019) (unpublished

---

[4] N.T. Restitution Hr'g, 5/8/18, at 10; N.T. Restitution Hr'g, 6/21/18, at 7-9.

memorandum). This Court did not reach the merits of Appellant's and Ms. Davis's claims.

Following remand from this Court, on November 13, 2019, the sentencing court reimposed the same sentence and restitution order. Appellant filed a timely Post-Sentence Motion in which she raised the same arguments as in her prior Post-Sentence Motion. On December 4, 2019, the sentencing court denied Appellant's Motion.

This timely appeal followed.[5] Appellant has complied with the sentencing court's Order to file a Pa.R.A.P. 1925(b) Statement. The sentencing court has filed a Statement in Lieu of Opinion referring this Court to the November 6, 2018 Rule 1925(a) Opinion prepared in conjunction with Appellant's prior appeal.

Appellant raises the following issues on appeal:

1. [A]ssuming a debt collector is an entity entitled to restitution under Section 1106, whether the trial court still imposed an illegal sentence in ordering restitution to Equian where Section 1106 requires a direct causal nexus between the defendant's crime and the requested damages for restitution, but the Commonwealth failed to demonstrate such nexus between [Appellant's] criminal conduct (Simple Assault) and the individual's loss (detached retina)[?]

2. Whether the trial court imposed an illegal sentence in ordering restitution to Equian, a debt collector, where restitution was entered pursuant to 18 Pa.C.S.[] § 1106 (Restitution for Injuries to Persons or Property) but a debt collector is not an entity that is entitled to restitution under Section 1106?

_____

[5] Ms. Davis filed a separate appeal, which is currently pending at No. 13 WDA 2020.

Appellant's Brief at 6 (reordered for ease of disposition).

In her first issue, Appellant claims the Commonwealth failed to prove a causal nexus between Appellant's crime and the victim's detached retina. Id. at 36-37. Appellant argues, in particular, that the victim's medical records from the date of the incident do not reflect that the victim suffered any trauma to her eyes, and do not show that her doctor referred her to an eye specialist for follow-up treatment. Id. at 36. Appellant concedes that the victim visited an eye clinic 12 days after the assault, whereupon her doctor diagnosed her with a retinal detachment, but asserts that none of the medical records or treatment notes in the Commonwealth's exhibits concluded, to a reasonable degree of medical certainty, that the assault caused the victim's retinal detachment. Id. Appellant avers that the evidence presented by the Commonwealth over the course of the three restitution hearings established only that the victim suffered bruising and the loss of her eyeglasses. Id.

The imposition of restitution is mandatory where a victim has "suffered personal injury directly resulting from" a crime. 18 Pa.C.S. § 1106(a)(2). Because restitution pursuant to 18 Pa.C.S. § 1106 is "penal in nature," there must be a direct link between the defendant's crime and the ordered restitution. Commonwealth v. Brown, 981 A.2d 893, 895 (Pa. 2009); Commonwealth v. Hall, 80 A.3d 1204, 1215 (Pa. 2013).

The Commonwealth bears the burden of proving the entitlement to restitution. Commonwealth v. Atansio, 997 A.2d 1181, 1183 (Pa. Super. 2010). A claim that a restitution order is unsupported by the record challenges

the legality of a defendant's sentence. Commonwealth v. Hunt, 220 A.3d 582, 585 (Pa. Super. 2019). Our standard of review is, therefore, de novo, and our scope of review is plenary. Id.

At her guilty plea hearing, Appellant stipulated to the Affidavit of Probable Cause that detailed that she and Ms. Davis repeatedly struck or punched the victim in the head and face resulting in immediate vision problems and visible facial injuries to the victim. N.T. Guilty Plea Hr'g, 3/12/18, at 14. See also Affidavit of Probable Cause, 5/20/17, at 2. The Affidavit of Probable Cause also reflects that the victim told police that she had head and face pain, and was having difficulty seeing because her glasses had been broken during the assault. Affidavit of Probable Cause at 2.

The medical records submitted by the Commonwealth demonstrated that the victim sought treatment immediately after the assault and pursued follow-up care to address continued vision loss. The records also confirm that twelve days after the assault, on June 1, 2017, a doctor diagnosed the victim with a detached retina of her right eye and, on June 7, 2017, a specialist performed corrective surgery. N.T. Restitution Hr'g, 4/13/18, at 13.

Last, the victim detailed her pain and trauma in her sworn victim impact statement and recounted that she "went completely blind in [her] right eye and went partially blind in [her] left. This has been a long and painful ride." N.T. Guilty Plea at 20. The victim also indicated that she will need to undergo additional surgery to address continuing vision problems. Id. at 20-21

The foregoing belies Appellant's claim that the Commonwealth did not establish a causal relationship between the Appellant's criminal assault of the victim and the victim's detached retina. Accordingly, Appellant is not entitled to relief on this claim.

In her second issue, Appellant challenges the sentencing court's award of restitution to Equian, a third-party debt collector.[6] In support, Appellant relies on Hunt, supra, to argue that the definition of "victim," provided in the version of the Restitution Statute applicable on the date of her offense does not include corporate entities like Equian, rendering the restitution portion of Appellant's sentence illegal under Pennsylvania law.[7]

A challenge to the sentencing court's authority to impose restitution implicates the legality of sentence. Commonwealth v. Oree, 911 A.2d 169, 173 (Pa. Super. 2006). Moreover, it is well-established that "if no statutory

---

[6] Appellant does not challenge the award of restitution to the victim or to the Victim's Compensation Assistance Program.

[7] The Commonwealth urges this Court to affirm the Order of restitution pertaining to Equian. In support, the Commonwealth baldly asserts that the victim's medical provider, UPMC, on behalf of whom the Commonwealth did not request and the trial court did not order the payment of restitution, was acting as the victim's insurer, which somehow rendered Equian, as UMPC's ostensible agent, entitled to restitution. The Commonwealth also suggests we apply the holding in Brown, supra, to the instant case. In Brown, our Supreme Court interpreted 18 Pa.C.S. § 1106(c)(1)(ii)(C) and held that Medicare, as a government agency who made payments to the victim's medical provider on behalf of the victim, was entitled to restitution. Brown, 981 A.2d 893, 895. Brown is inapposite. Here, no government agency is involved and UPMC provided medical, not insurance, services to the victim, who the parties agree was uninsured. The Commonwealth's tortured argument is lacking legal and factual support. We, thus, reject it.

authorization exists for a particular sentence, that sentence is illegal and . . . must be vacated." Commonwealth v. Rivera, 95 A.3d 913, 915 (Pa. Super. 2014) (citation omitted). As noted supra, our standard of review of illegal sentence claims is de novo and our scope of review is plenary. Hunt, 220 A.3d at 584.

Relevant to the instant appeal, on October 24, 2018, the Legislature amended the Restitution Statute, 18 Pa.C.S § 1106. However, Appellant's criminal actions and the entry of her guilty plea predated the statute's amendment. Accordingly, the pre-amendment version of the Restitution Statute applies to her sentence. Hunt, 220 A.3 at 585-87; Commonwealth v. Tanner, 205 A.3d 388, 396 n.7 (Pa. Super. 2019).

The applicable version of the statute provides, in relevant part, as follows:

> (a) General Rule.—Upon conviction of any crime . . . wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.
>
> * * *
>
> (c) Mandatory Restitution.—
>
>     (1)The court shall order full restitution[.]
>
> * * *
>
>     (ii) If restitution to more than one person is set at the same time, the court shall set priorities of payment. However, when establishing priorities, the court shall order payment in the following order:

(A)  The victim.

(B)  The Crime Victim's Compensation Board.

(C) Any government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(D) Any insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

18 Pa.C.S. § 1106(a), (c)(1)(ii).

The applicable version of the statute defines the term "victim" largely by reference to The Administrative Code of 1929.  However, in 1998, the Legislature repealed the definition of "victim" set forth in The Administrative Code of 1929, and replaced it with the definition of the term "victim" under the Crime Victims Act ("CVA"), 18 P.S. 11.103.  The CVA defined "victim" as:

(1) A direct victim.

(2) A parent or legal guardian of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.

(3) A minor child who is a material witness to [enumerated offenses under 18 Pa.C.S. not applicable here] committed or attempted against a member of the child's family[.]

(4) A family member of a homicide victim[.]

18 P.S. § 11.103.  The CVA further defines "direct victim" as "[a]n individual against whom a crime has been committed or attempted and who as a direct result of the criminal act or attempt suffers physical or mental injury, death or the loss of earnings under this act."  Id. (emphasis added).

In Hunt, this Court considered the same pre-amendment version of the Restitution Statute that is applicable in the instant case.  There, the defendant

had embezzled funds from his corporate employer. As part of his sentence, the court ordered that he pay restitution to that corporation. The defendant filed a Motion to Modify Restitution, which the trial court denied. In reversing the restitution order, the Hunt Court held that, because an "individual" is a "natural person," the definition of "direct victim" in the CVA did not include the corporate entity to which the trial court had ordered the defendant to pay restitution. Id. at 590-91. The Court, thus, concluded that because the defendant's employer was not authorized to receive restitution under the Restitution Statute, the sentencing court's restitution order was illegal. Id. at 591. The Hunt court, therefore, vacated the appellant's judgment of sentence, and remanded the case with instructions to the court to resentence the appellant. Id. at 592.

The Hunt holding is dispositive. As noted supra, the sentencing court here ordered Appellant to pay restitution to a corporate entity, just as the trial court did in Hunt. Pursuant to Hunt, under the applicable provision of the Restitution Statute, a corporate entity is not a "victim" to whom the sentencing court is authorized to order payment of restitution. Accordingly, the sentencing court erred as a matter of law in directing that Appellant pay restitution to Equian. This error renders Appellant's sentence illegal and we, thus, vacate the Judgment of Sentence and remand for resentencing.

Order reversed. Judgment of Sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/30/2020</u>